UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 20-60109-CR-Smith/Valle

21 U.S.C. § 331(a)
21 U.S.C. § 333(a)(1) and (a)(2)
21 U.S.C. § 334
18 U.S.C. § 2

UNITED STATES OF AMERICA,

vs.

DERMA LASER CENTER, LLC, and
NADER HAROUN SHEHATA,

   Defendants.
_____/



FILED BY _PCS_ D.C.

OCT 07 2020

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. – W.P.B.

## INFORMATION

The United States Attorney charges that:

### GENERAL ALLEGATIONS

At all times relevant to this Information:

1.   **NADER HAROUN SHEHATA** ("**SHEHATA**"), a resident of Miami-Dade County, Florida, was a medical doctor licensed to practice medicine by the Florida Board of Medicine.

2.   **DERMA LASER CENTER, LLC** was a Florida limited liability company engaged in the business of cosmetic dermatology. **DERMA LASER CENTER, LLC** maintained offices in Hallandale Beach and Jupiter, Florida. **SHEHATA** was a manager and registered agent of **DERMA LASER CENTER, LLC**.

3.   The Food and Drug Administration (FDA) was the federal agency charged with the responsibility of protecting the health and safety of the American public by enforcing the Federal Food, Drug, and Cosmetic Act (FDCA). Among other responsibilities, the FDA enforced laws

and regulations intended to ensure that drugs and devices were safe and effective for their intended uses and bore labeling that contained true and accurate information and had adequate directions for use.

4. Whether a product was a "drug" under the FDCA depended on its intended use. 21 U.S.C. § 321(g)(1). "[A]rticles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease" were drugs within the meaning of the FDCA, 21 U.S.C. § 321(g)(1)(B), as were "articles (other than food) intended to affect the structure or any function of the body," 21 U.S.C. § 321(g)(1)(C).

5. The "intended use" of a drug meant the objective intent of the persons legally responsible for labeling of that drug. The intent was determined by such person's expressions, the circumstances surrounding the distribution of the article, labeling claims, advertising matter, or oral or written statements by such persons or their representatives. 21 C.F.R. § 201.128.

6. The FDCA defined "labeling" as "all labels and other written, printed, or graphic matter (1) upon any article or any of its containers or wrappers, or (2) accompanying such article," 21 U.S.C. § 321(m), and "label" as "a display of written, printed, or graphic matter upon the immediate container of any article," 21 U.S.C. § 321(k).

7. Under the FDCA, a "prescription drug" was any drug intended for use in humans that, because of its toxicity or other potentiality for harmful effect, or the method of its use, or the collateral measures necessary for its use, was not safe for use except under the supervision of a practitioner licensed by law to administer such drug; or was limited by an approved application under section 21 U.S.C. § 355 for use under the professional supervision of a practitioner licensed by law to administer such drug. 21 U.S.C. § 353(b)(1).

2

8. A drug was considered misbranded if any word, statement, or other information required by or under the authority of the FDCA to appear on the label or labeling was not prominently placed thereon with such conspicuousness and in such terms as to render it likely to be read and understood by the ordinary individual under customary conditions of purchase and use. 21 U.S.C. § 352(c). In order for a label or labeling to be likely to be read and understood, all words, statements, and other information required by or under the authority of the FDCA shall appear on the label or labeling in the English language. 21 C.F.R. § 201.15(c)(1).

9. Under the FDCA, a drug was also deemed misbranded if it was a prescription drug, and its label failed to bear the symbol "Rx only" at any time prior to dispensing. 21 U.S.C. § 353(b)(4)(A).

10. Additionally, a drug was misbranded under the FDCA if its labeling was false or misleading in any particular. 21 U.S.C. § 352(a)(1).

11. The FDCA defined a device, in relevant part, as an instrument, apparatus, implement, machine, contrivance, implant, *in vitro* reagent, or other similar or related article, including any component, part, or accessory, which was intended for use in the diagnosis of disease or other conditions, or in the cure, mitigation, treatment, or prevention of disease, in man or other animals, or intended to affect the structure or function of the body of man or other animals, and which did not achieve its primary intended purposes through chemical action within or on the body of man or other animals and which was not dependent upon being metabolized for the achievement of its primary intended purposes. 21 U.S.C. § 321(h).

12. Devices were classified into one of three categories, Class I (lowest risk), Class II (moderate risk), or Class III (highest risk). 21 U.S.C. § 360c. A device's class determined the

type of regulatory controls to which it was subject and any process it must go through prior to marketing. Pursuant to the FDCA, any device that was not in commercial distribution before May 28, 1976 was initially classified as a Class III device unless shown to be substantially equivalent to a legally marketed device. 21 U.S.C. § 360c(f)(1).

13. A device classified as Class III was required to have an FDA approved application for pre-market approval ("PMA") before the device could be distributed in interstate commerce. 21 U.S.C. § 360e(a)(2).

14. A device was adulterated if, among other things, it was a Class III device pursuant to 21 U.S.C. § 360c(f), and was required under 21 U.S.C. § 360e(a) to have in effect an approved PMA, and did not have such an approval in effect. 21 U.S.C. § 351(f).

15. The FDCA defined a "prescription device" as "[a] device which, because of any potentiality for harmful effect, or the method of its use, or the collateral measures necessary to its use was not safe except under the supervision of a practitioner licensed by law to direct the use of such device . . . ." 21 C.F.R. § 801.109.

16. Under the FDCA, a device was deemed misbranded for failure to bear adequate directions for use if it was a prescription device and the label of the device failed to bear the symbol statement "Rx only" or "□ only" or the statement "Caution: Federal law restricts this device to sale by or on the order of a ___", the blank to be filled with the word "physician," "dentist," "veterinarian," or with the descriptive designation of any other practitioner licensed by the law of the State in which the practitioner practices to use or order the use of the device. 21 U.S.C. § 352(f)(1), 21 C.F.R. § 801.109(b).

17. Botox® and Dysport were prescription drugs under the FDCA. Cutegel Max and HyalDew hyaluronic acid were Class III prescription devices under the FDCA.

## COUNT 1

18. Beginning no later than in or about September 2017 and continuing through on or about July 19, 2019, in Broward County, in the Southern District of Florida, and elsewhere, the defendant,

**DERMA LASER CENTER, LLC.,**

did, with intent to defraud and mislead, cause the introduction and delivery for introduction into interstate commerce of misbranded prescription drugs, including Botox® and a product labeled as Dysport, and adulterated and misbranded prescription devices, including Cutegel Max and HyalDew hyaluronic acid, in that, the label and labeling of the Botox® did not contain in the English language all words, statements, and other information required by or under the authority of the FDCA; the labeling of the Dysport was false and misleading, that is, the labeling stated that the product contained Clostridium Botulinum Type A, but testing showed that Clostridium Botulinum Type A was not present in the product; the labels of the prescription drugs Botox® and Dysport did not bear "Rx Only;" the Cutegel Max and HyalDew hyaluronic acid did not have an approved PMA in effect; and the labels of the prescription devices Cutegel Max and HyalDew hyaluronic acid did not bear "Rx only" and "☐ only" and the statement "Caution: Federal law restricts this device to sale by or on the order of a . . .", in violation of Title 21, United States Code, Sections 331(a) and 333(a)(2).

## COUNT 2

19. Beginning no later than in or about September 2017 and continuing through on or about July 19, 2019, in Broward County, in the Southern District of Florida, and elsewhere, the defendant,

**NADER HAROUN SHEHATA,**

did cause the introduction and delivery for introduction into interstate commerce of misbranded prescription drugs, including Botox® and a product labeled as Dysport, and adulterated and misbranded prescription devices, including Cutegel Max and HyalDew hyaluronic acid, in that, the label and labeling of the Botox® did not contain in the English language all words, statements, and other information required by or under the authority of the FDCA; the label and labeling of the Dysport was false and misleading, that is, it stated that the product contained Clostridium Botulinum Type A, but testing showed that Clostridium Botulinum Type A was not present in the product; the labels of the prescription drugs Botox® and Dysport did not bear "Rx Only;" the Cutegel Max and HyalDew hyaluronic acid did not have an approved PMA in effect; and the labels of the prescription devices Cutegel Max and HyalDew hyaluronic acid did not bear "Rx only" and "☐ only" and the statement "Caution: Federal law restricts this device to sale by or on the order of a . . .", in violation of Title 21, United States Code, Sections 331(a) and 333(a)(1).

## FORFEITURE ALLEGATIONS

20. The allegations contained in this Information are hereby re-alleged and incorporated herein by reference for alleging criminal forfeiture to the United States of America of certain property in which the defendants, **DERMA LASER CENTER, LLC and NADER HAROUN SHEHATA**, have an interest.

21. Upon conviction of a violation of Title 21, United States Code, Section 331(a) and/or Section 333(a)(1), as alleged in this Information, the defendant so convicted shall forfeit to the United States of America, the following property:

    (a) Pursuant to Title 21, United States Code, Section 334(a)(2):

        (1) Any drug that is a counterfeit drug;

        (2) Any container of a counterfeit drug; and

        (3) Any punch, die, plate, stone, labeling, container, or other thing used or designed for use in making a counterfeit drug or drugs; and

        (4) Any adulterated or misbranded device.

    (b) Pursuant to Title 18, United States Code, Section 981(a)(1)(C):

        (1) Any property, real or personal, which constitutes or is derived from proceeds traceable to such violation.

All pursuant to Title 21, United States Code, Section 334(a)(2), Title 18, United States Code, Section 981(a)(1)(C), and the procedures outlined at Title 21, United States Code, Section 853, as made applicable by Title 28, United States Code, Section 2461(c).

*[signature]*
ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

*[signature]*
ROBIN W. WAUGH
ASSISTANT UNITED STATES ATTORNEY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

CASE NO. **20-60109-CR-Smith/Valle**

v.

**Nader Haroun Shehata, et al.**

## CERTIFICATE OF TRIAL ATTORNEY*

**Superseding Case Information:**

_____Defendants._____/

| Court Division: (Select One) | | | | New defendant(s) | Yes ____ | No ____ |
|---|---|---|---|---|---|---|
| ___ Miami | ___ | Key West | | Number of new defendants | ____ | |
| ✓ FTL | ___ | WPB ___ FTP | | Total number of counts | ____ | |

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter:   (Yes or No)   No
   List language and/or dialect   _____

4. This case will take __3__ days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)                            (Check only one)

   I    0 to 5 days         ✓         Petty       _____
   II   6 to 10 days        _____   Minor       _____
   III  11 to 20 days       _____   Misdem.     _____
   IV   21 to 60 days       _____   Felony        ✓
   V    61 days and over    _____

6. Has this case previously been filed in this District Court?   (Yes or No)   No
   If yes: Judge _____   Case No. _____
   (Attach copy of dispositive order)
   Has a complaint been filed in this matter?   (Yes or No)   No
   If yes: Magistrate Case No. _____
   Related miscellaneous numbers: _____
   Defendant(s) in federal custody as of _____
   Defendant(s) in state custody as of _____
   Rule 20 from the District of _____

   Is this a potential death penalty case? (Yes or No)   No

7. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia O. Valle)?   Yes ____   No ✓

8. Does this case originate from a matter pending in the Northern Region U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)?   Yes ____   No ✓

_____
Robin Waugh
ASSISTANT UNITED STATES ATTORNEY
Florida Bar No./Court No. 537837

*Penalty Sheet(s) attached

REV 8/13/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

Defendant's Name: __DERMA LASER CENTER, LLC.__

Case No.: __20-60109-CR-Smith/Valle__

**Count # 1:**

Introduction of Misbranded Drugs and Medical Devices with Intent to Defraud
21 U.S.C. §§ 331(a) and 333(a)(2)

**\*Max. Penalty:**   1 – 5 years' probation; Fine of $500,000 or twice the gross gain or loss resulting from the offense, whichever is greater.

\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

Defendant's Name: __NADER HAROUN SHEHATA__

Case No.: __20-60109-CR-Smith/Valle__

**Count # 2:**

Introduction of Misbranded Prescription Drugs and Medical Devices
21 U.S.C. §§ 331(a) and 333(a)(1)

*Max. Penalty: 1 Year Imprisonment; 1 Year Supervised Release; $100,000 Fine

\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NUMBER: 20-60109-CR-Smith/Valle

### BOND RECOMMENDATION

DEFENDANT: NADER SHEHATA for DERMA LASER CENTER

$100,000 PSB
(Personal Surety) (Corporate Surety) (Cash) (Pre-Trial Detention)

By: _____
AUSA: Robin W. Waugh

Last Known Address: _____

_____

_____

What Facility: _____

_____

Agent(s): Carlos Oliveras, Border Patrol
(FBI)  (SECRET SERVICE)  (DEA)  (IRS)  (ICE)  (**OTHER**)

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NUMBER: **20-60109-CR-Smith/Valle**

### BOND RECOMMENDATION

DEFENDANT: NADER HAROUN SHEHATA

$100,000 PSB

(Personal Surety) (Corporate Surety) (Cash) (Pre-Trial Detention)

By: _____
AUSA: Robin W. Waugh

Last Known Address: _____

What Facility: _____

Agent(s): Carlos Oliveras, Border Patrol
(FBI)   (SECRET SERVICE)   (DEA)   (IRS)   (ICE)   (**OTHER**)

AO 455 (Rev. 01/09) Waiver of an Indictment

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No. |
| DERMA LASER CENTER, LLC | ) | **20-60109-CR-Smith/Valle** |
| | ) | |
| *Defendant* | ) | |

## WAIVER OF AN INDICTMENT

I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year. I was advised in open court of my rights and the nature of the proposed charges against me.

After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.

Date: _____

_____
*Defendant's signature*

_____
*Signature of defendant's attorney*

LAWRENCE HASHISH
*Printed name of defendant's attorney*

_____
*Judge's signature*

_____
*Judge's printed name and title*

AO 455 (Rev. 01/09) Waiver of an Indictment

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| United States of America | ) | |
|---|---|---|
| v. | ) | Case No. |
| NADER HAROUN SHEHATA | ) | |
| | ) | **20-60109-CR-Smith/Valle** |
| Defendant | ) | |

## WAIVER OF AN INDICTMENT

I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year. I was advised in open court of my rights and the nature of the proposed charges against me.

After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.

Date: _____

_____
*Defendant's signature*

_____
*Signature of defendant's attorney*

LAWRENCE HASHISH
*Printed name of defendant's attorney*

_____
*Judge's signature*

_____
*Judge's printed name and title*